**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **3:14-CR-270** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **SHALIEK STROMAN,** | : | |
| **Defendant** | : | |

## MEMORANDUM

## I.   BACKGROUND

On May 15, 2020, defendant Shaliek Stroman, an inmate at FCI-Loretto, Cresson, Pennsylvania, filed, *pro se*, a Motion for a Court Order Granting Immediate Release to Home Confinement pursuant to the CARES Act, and the March 26, 2020 and April 3, 2020 Memoranda issued by Attorney General Barr to the BOP after the Act was enacted. (Doc. 513). Stroman requests the court to intervene in his case and to order the BOP to immediately release him to home confinement even though he states that he does not qualify under the BOP's "arbitrary" guidelines and policy. He states that he is "a low risk", "currently [confined] in a camp [without a fence]", and that in the "total time of [his] incarceration of 65 months [he has] had no incident reports, and [is] at a high risk if [he] contract[s] COVID-19." Thus, he alleges that he is "a fitting candidate for home confinement under the CARES Act", despite the BOP's determination that he is not. He seeks the court to

1

order his release from prison to home confinement at his mother's house in Edwardsville, Luzerne County, Pennsylvania.[1]

On May 18, 2020, Stroman filed a brief in support of his motion and a supplement, citing to cases in which he states the courts "assumed jurisdiction pursuant to the CARES Act, ordering the immediate release of inmates to home confinement who do not qualify for relief under the current BOP policy." (Docs. 514 & 515). Stroman also appears to request the court to waive the exhaustion requirement, insofar as his motion is one for compassionate release under 18 U.S.C. §3582(c)(1)(A), based on the COVID-19 outbreak and the alleged risk he may suffer severe complications if he contracts the virus. He also appears to contend that the COVID-19 pandemic, regardless of an inmate's lack of any underlying medical conditions, constitute "extraordinary and compelling reasons" under §3582(c)(1)(A), allowing the court to release an "at-risk" inmate to home confinement.

The government filed its brief in opposition to Stroman's motion on May 20, 2020. (Doc. 516)

Stroman then filed a reply brief on June 2, 2020, with Exhibits and a supplement with an attached June 2019 opinion from a district court in North Carolina. (Docs. 517 & 518). Stroman's Ex.1 indicates that he was reviewed

---

[1]The court notes that in Luzerne County, where Stroman wishes to be placed on home confinement with his mother, as of June 18, 2020, there were 2,841 positive COVID-19 cases reported and 169 deaths. *See* PA Dept. of Health website.

by the BOP on November 21, 2019, prior to the COVID-19 pandemic, and deemed eligible under the First Step Act and found to be a "low" recidivism risk level.

On June 8, 2020, Stroman filed another supplement in which he provides a copy of the Warden's June 3, 2020 response denying his May 21, 2020 request for compassionate release due to COVID-19, and contends that "[t]his is in satisfaction of exhaustion of administrative remedy requirement pursuant to section 3582(c)(1)(A) if any exists." (Doc. 519).

In short, Stroman requests the court to order the BOP to release him to home confinement to serve the remainder of his 151-month prison sentence. In his filings, as the government points out, (Doc. 516 at 12-13), "[Stroman] does not identify any medical or physical condition that makes him susceptible to the COVID-19 virus and that places him in greater danger of death or serious illness if he catches the virus." In fact, in his reply brief, (Doc. 517 at 9), Stroman concedes that he "does not claim to have a medical condition that makes him more susceptible to or places him in greater danger of COVID-19." Nor is Stroman in the high risk age category.[2]

In his reply brief, (Doc. 517 at 13), Stroman stated that he "submitted an Inmate Request for Compassionate Release Consideration Form to the

---

[2] The court notes that it considered defendant's physical condition stated in his PSR, (Doc. 248 at 10-12), which reflects that he is currently 36 years old and that he did not have any reported medical conditions, other than an allergy to shell fish. Nor was it noted that defendant was taking any medication.

Warden", and that he filed his instant motion without yet receiving a response to his request "because of the time sensitive nature of [his] request." Stroman also indicated that he will file the response from the Warden as a supplement when he receives it. Stroman indicated that he believes the Warden will deny his request since "the Loretto staff has not processed a single person who falls outside the BOP's arbitrary guidelines of 50% of sentence served and a minimum Pattern score" and, that staff, along with the Warden "have informed inmates that they will not even be considered for direct release to home confinement if they do not [meet] these two criteria." He also alleged that it is futile to exhaust his BOP administrative remedies and that this requirement should be waived since "the BOP is claiming that he is not eligible per its policy in the first place." (Doc. 517 at 6).

Then on June 8, 2020, as he said he would, Stroman filed a supplement with a copy of the Warden's June 3, 2020 response denying his May 21, 2020 "Request for Compassionate Release/Reduction in Sentence Consideration based on "concern about getting Corona Virus." (Doc. 519).

Stroman contends that he has now exhausted his administrative remedies. (Doc. 519). No doubt that after he filed his instant motion, Stroman filed a request with the Warden and it has been denied, but he has not yet appealed the Warden's decision as required.

To the extent Stroman requests the court to direct the BOP to release him from prison to home confinement, or to amend his sentence to allow him to serve the remainder of his prison term in home confinement, due to

4

COVID-19, his filing is construed as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), and it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies.

To the extent Stroman is seeking the court to order the BOP to find him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.

## II.    DISCUSSION[3]

In his present filings, (Docs. 513-515), defendant Stroman requests the court order the BOP to immediately transfer him from FCI-Loretto to home confinement and requests the court allow him to serve the remainder of his 151-month prison sentence in home confinement due to the COVID-19 pandemic. Based on these allegations, defendant appears to contend that

---

[3]Defendant is currently serving a 151-month prison sentence, after he pled guilty to conspiracy to distribute heroin, in violation of 21 U.S.C. §846. Defendant was also ordered to be on 3-years of supervised release following the service of his prison sentence. (Doc. 266). The complete background of defendant's case was stated in the court's memorandum denying his 2255 motion. (Doc. 490. *See also* Doc. 516 at 2). Also, as the government states, (Id. at 12), "defendant had six prior convictions, including four drug trafficking convictions, at the time of his sentencing", and "[h]e was sentenced as a career offender."

there exists extraordinary and compelling circumstances warranting his release from prison to home confinement.[4]

In its brief in opposition, (Doc. 516 at 2), the government states that Stroman's request for compassionate release from prison to home confinement under the First Step Act, 18 U.S.C. §3582(c)(1)(A), should be dismissed because he has not exhausted his administrative remedies. As stated, Stroman has subsequently requested the Warden for compassionate release and his request was denied on June 3, 2020. The Warden also

---

[4]Since the government included in its response of all of the safety measures implemented by the BOP in response to the COVID-19 virus, (Doc. 516 at 3-12), as well as the protocols implemented at FCI-Loretto, and since this court is well-aware of all of the safety measures implemented by the BOP, *see* Cordaro, 2020 WL 2084960, and since many of the measures are found on the BOP's website, they are not repeated. *See also* BOP website: www.bop.gov/coronavirus/index.jsp. The court has also reviewed the May 26, 2020 Memorandum from Ken Hyle, BOP Assistant Director/General Counsel to the Honorable Ricardo S. Martinez, Chair of the Judicial Conference Criminal Law Committee, regarding updated information from the Bureau of Prisons with respect to its response to the COVID-19 pandemic and about revised screening procedures for new inmates being confined in federal prisons to reduce the spread of the virus.

Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. However, FCI-Loretto is not listed on the website as of June 18, 2020. The BOP has advised the court that "if a prison is not listed, then they have no reportable staff or inmate [COVID-19] cases." In any event, the government represents that "[a]ccording to FCI Loretto's administrators, as of May 19, 2020, there are no COVID-19 cases at FCI Loretto", and that "FCI Loretto is located in a rural area and there are few reported COVID-19 cases in the surrounding area." (Doc. 516 at 11-12). In his reply brief, Stroman does not appear to dispute the government's assertion that FCI-Loretto does not have any confirmed COVID-19 cases.

advised Stroman that "[i]f you are dissatisfied with this response, the First Step Act allows you to file an appeal directly with the court 30 days after requesting compassionate release from the Warden without utilizing and/or exhausting the Administrative Remedy process." The Warden also advised Stroman that he "may also appeal through the Administrative Remedy Program." (Doc. 519).

The government states that "the relevant factors indicate that §3582(c) sets forth a jurisdictional limitation on a district court's authority to modify a sentence, such that a district court lacks jurisdiction to consider a motion for a sentence reduction where the defendant has failed to satisfy the exhaustion requirement of §3582(c)(1)(A). (516 at 21-22). As such the government states that "[b]ecause Stroman has not exhausted his remedies with the BOP, his motion should be denied without prejudice to refiling once he has exhausted all administrative remedies." (Id. at 29-30).

In his supplemental filing, Stroman contends that he has exhausted his BOP administrative remedies since he just recently received the response from the Warden denying his request for compassionate release. (Doc. 519). However, he has not yet appealed the response from the Warden. As such, the court lacks jurisdiction over Stroman's motion and it will be dismissed without prejudice. Also, since the Warden timely responded to Stroman's May 21, 2020 request on June 3, 2020, Stroman cannot directly file an appeal with the court without exhausting his administrative remedies. Only if the Warden fails to respond to the inmate's request within 30 days, can the

inmate file his motion for compassionate release with the court without exhausting his BOP administrative remedies.

As the court in United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

> Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

Recently, in Early, 2020 WL 2572276, *3, the court considered a similar exhaustion issue as presented in the instant case, and stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court in Early, *id.*, also stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)). "In Raia, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the 'exhaustion requirement takes on

added – and critical – importance.'" *Id.* (quoting <u>Raia</u>, 954 F.3d at 597). "The BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Id.*

Also, Stroman, just like the defendant in the <u>Early</u> case, *id.* at *2, submits that he has exhausted his administrative remedies simply because the warden formally denied his request within the 30-day time frame provided for in the First Step Act.

The court in <u>Early</u>, *id.* at *3, then explained:

Defendant's reading of the statute is misplaced. Courts have interpreted the statue to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days. *See* <u>United States v. Nance</u>, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In other words, a defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first. *Id.* ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request."), citing, <u>United States v. Bolino</u>, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020). *See also*, <u>United States v. Bevans-Silva</u>, 2020 WL 2475079 (S.D. Ga. May 13, 2020); <u>United States v. Samuels</u>, 2020 WL 2499545, at *2 (W.D. La. May 13, 2020); <u>United States v. McCallister</u>, 2020 WL 1940741, at *2 (W.D. La. April 21, 2020); <u>United States v. Rodriguez</u>, —— F.Supp.3d ——, ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) ("Under the First Step Act ... it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden never responds to their request for relief."); <u>United States v. Mattingley</u>, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); <u>United States v. Keith</u>, 2019 WL 6617403, at *1 (W.D. Okla. Dec. 5,

2019)(To exhaust administrative remedies, a defendant "first submits his request to BOP and either (1) complete the administrative appeal process, if BOP denies his request; or (2) wait 30 days from BOP's receipt of his request to deem its lack of response a denial of his request."). [District Court criminal nos. omitted].

In United States v. Solomon, 2020 WL 2768897, *3 (W.D.Pa. May 28, 2020), the court stated, "[c]ourts have interpreted [18 U.S.C. §3582(c)(1)(A)] to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days." (citing Early, 2020 WL 2572276, at *3). As such, Stroman must wait to file a motion with the court after he fully exhausts all administrative rights to appeal the Warden's denial of his administrative request for compassionate release since the Warden responded to his request within 30 days from the date he submitted his request. *See id.* (citing Early, 2020 WL 2572276, at *3).

In the present case, just as in Early, 2020 WL 2572276, at *3, "Warden [Moser] responded to [Stroman's] [May 21, 2020] request within 30 days of receipt [i.e., on June 3, 2020]." (Doc. 519 at 2). Thus, Stroman "is obligated to complete the administrative appeal process", and the court finds that "[he] has failed to exhaust his administrative remedies." *Id.*

Thus, it is clear that Stroman has not exhausted all of his BOP administrative remedies prior to his instant filing. Since Moser timely denied Stroman's request for release to home confinement on June 3, 2020, Stroman must still file an appeal with the BOP Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R.

§542.15(a). Then if the Regional Director denies his appeal, Stroman must appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id*. The appeal to the General Counsel is the final administrative appeal in the process. *Id*. *See also* Early, 2020 WL 2572276, *2 (citing 28 C.F.R. §542.15(a)).

Stroman states that several district courts from around the country, but outside of the Third Circuit, have reduced defendants' sentences pursuant to §3582(c)(1)(A), and found that the courts had jurisdiction despite the failure of the defendants to have exhausted their administrative remedies. (*See* Doc. 517 at 6-7). Stroman also alleges that the BOP has released defendants, similarly situated to him who have been found to pose a "low risk" of recidivism and designated to the camp, from FCI Loretto to home confinement under the CARES Act after finding that they faced a threat from COVID-19 even though they, like him, did not have any underlying health condition. He also contends that the BOP's decisions as to which defendants are being released to home confinement under the CARES Act are discriminatory, an abuse of discretion and, arbitrary and capricious.[5]

As in Early and Solomon, since the Warden of FCI-Loretto responded to Stroman's request for compassionate release within 30 days of receipt,

---

[5]Insofar as Stroman is attempting to raise an Equal Protection claim under the 14th Amendment, (Doc. 517 at 10 & Doc. 518 at 1), he must file his constitutional claim in a Bivens civil rights action in the district where he is confined after he exhausts his BOP administrative remedies.

"[]he must exhaust h[is] administrative remedies before []he may seek relief in this Court." Solomon, 2020 WL 2768897, *3-4.

Stroman has not exhausted all of his administrative remedies available with the BOP regarding his motion, as a result, the court will dismiss it without prejudice.

The government also contends that insofar as Stroman is seeking relief under the CARES Act "[t]his request should be denied because the court has no authority to direct the BOP to place a defendant in home confinement" and that the determination of which defendant qualifies for home confinement under the CARES Act is with the BOP Director. (Doc. 516 at 39-40). Thus, it basically contends that the court lacks the authority to grant Stroman the relief that he is seeking under the CARES Act.

The court concurs with the government regarding its above two stated assertions and Stroman's motion will be dismissed without prejudice since it is premature due to his failure to exhaust his BOP administrative remedies to the extent it is under the First Step Act, 18 U.S.C. §3582(c)(1)(A). Stroman's motion will be dismissed to the extent it is under the CARES Act since the court does not have the authority to grant defendant relief under the Act.

However, the government also argues in its brief, (Doc. 516 at 41-52), that this court should not additionally construe defendant's motion seeking release from prison due to COVID-19 as a habeas petition under 28 U.S.C. §2241. It has not. The government then cites to this court's decisions in

recent cases similar to Stroman's, and submits that this analysis is wrong[6] and essentially opposes these decisions insofar as this court has liberally construed the *pro se* prisoner's filing as a §2241 habeas petition in addition to motions for compassionate release under §3582(c)(1)(A) and the CARES Act. The government also states that Stroman has not filed a motion under §2241. Which, Stroman concurs, indicating he is not seeking habeas under §2241 and does not want the court to construe his motion as a habeas petition.

Secondly, the court cannot yet determine if Stroman has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence, since he has not exhausted his administrative remedies. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence.") (emphasis added); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's

---

[6]To the extent the government disagrees with a court decision, the proper avenue of redress is an appeal to the United States Court of Appeals. Crying over spilt milk in subsequent briefs on different cases degrades the government's credibility and misuses the proper appellate procedure.

failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

As the Third Circuit in <u>Raia</u>, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* <u>Feiling</u>, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in <u>Raia</u>] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement); <u>Smith</u>, *supra* (same); <u>Edwards</u>, 2020 WL 1987288, *10 n.6 (court noted that the Third Circuit's conclusion in <u>Raia</u> that the exhaustion requirement was "non-waivable" and that the failure to exhaust administrative remedies forecloses compassionate release was not "mere 'dicta'"). The court in <u>Early</u>, 2020 WL 2572276, *3, also recently stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative

14

remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)).

Moreover, the Third Circuit in Raia, 954 F.3d at 597, stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *See also* Feiling, 2020 WL 1821457, *7 ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision."); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); United States v. Boyles, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); United States v. Wright, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement."); United States v. Edwards, 2020 WL

15

1987288 (MD.Tn. April 27, 2020) (after an extensive review of recent cases filed in light to the COVID-19 pandemic, the court concluded that "[it] cannot consider the Motion [for compassionate release] until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied", and denied the Motion without prejudice to refiled it once exhaustion was completed); United States v. Johnson, ---F.3d---, 2020 WL 1663360, *6 (D.Md. April 3, 2020) (Court held that since prisoner seeking relief under §3582(c)(1)(A) did not fully exhaust his administrative remedies, it lacked jurisdiction over motion and would not consider whether prisoner presented "extraordinary and compelling reasons" warranting his release from prison until exhaustion was completed).

Additionally, insofar as defendant is construed as relying on the CARES Act, which was signed into law on March 27, 2020, as the basis for his release to home confinement, such reliance is misplaced.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

16

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. *See* United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."). In fact, the CARES Act "does not mandate home confinement for any class of inmate." Valenta v. Ortiz, 2020 WL 1814825, *1 (D.N.J. April 9, 2020).

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020,[7] the BOP Director may increase the maximum amount

---

[7] *See* Furando, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3; <u>Cruz</u>, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; <u>Cordaro</u>, 2020 WL 2084960, *6.


## III.    CONCLUSION

Insofar as Stroman's Motion is for Compassionate Release or for Reduction of Sentence and for Immediate Release to Home Confinement related to the COVID-19 pandemic, **(Doc. 513)**, it will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Insofar as Stroman is seeking this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Dated: August 3, 2020**
14-270-01

18